IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID DAVIS, by and through his | : | 1:15-cv-0508 |
| legal guardian, Maribeth Donohue, | : | |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| RANDALL MARTIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### June 12, 2015

Three motions are presently pending before the Court:  a Motion to Transfer Venue filed by the Maryland State Defendants (Doc. 3); a Motion to Dismiss filed by the Maryland State Defendants (Doc. 5); and a Motion to Dismiss or to Transfer Venue filed by Defendants Randall Martin, Theresa Martin, Lifeline, Inc., and Lifeline, LLC (Doc. 7).  For the reasons herein articulated, the Court will transfer this action to the United States District Court for the District of Maryland.

## I.    BACKGROUND

Plaintiff, David Davis, is a disabled individual who is a resident of Maryland and, at all times relevant, was committed to the care of a residential facility in Maryland.  (Doc. 1-3, ¶¶ 1, 3).  His legal guardian, Maribeth Donohue, is also a

Maryland resident.

There are 15 named Defendants in this action.  The defendant corporate entities are Lifeline, Inc.; Lifeline, LLC; Lifeline of Maryland/Virginia, Inc.; and Lifeline of Pennsylvania, Inc. (together, the "Lifeline Corporation" or "Lifeline"). (*Id.* ¶¶ 10-13, 28).  The Lifeline Corporation managed the facility in which Plaintiff Davis lived.  (*Id.* ¶ 28).  Defendants Randall Martin and Theresa Martin were the sole shareholders, officers, and directors of the above corporation.  (*Id.* ¶¶ 4-6).  (Collectively, we shall refer to these defendants as the "Lifeline Defendants.")  The following state and municipal entities are also named as defendants in this action:  Comptroller of Maryland, Maryland State Treasurer's Office, Office of the Governor of Maryland, Board of Public Works (Maryland), Maryland Department of Disabilities, Department of Health and Mental Hygiene (Maryland), Department of Human Resources (Maryland), Baltimore Social Services Department, and the State of Maryland (collectively, the "Maryland Defendants").  (*Id.* ¶¶ 17-25).  All of the Defendants are residents of the state of Maryland except for Lifeline of Pennsylvania, which is a Pennsylvania corporation.

By way of brief summary, the Lifeline Corporation offered residential and other services to "medically fragile" individuals, many of whom were confined to

bed or wheelchair by paralysis, cerebral palsy, and other disabilities.  (*Id.* ¶¶ 28,

30, 34).  Maryland officials have investigated and sanctioned Lifeline on multiple

occasions for, among other things, inadequate care, abuse, and understaffing that

has resulted in harm to and in some cases the death of residents.   (*Id.* ¶¶ 36, 37,

39).  The Complaint recounts that a quadriplegic resident was left in her urine and

feces; a blind paraplegic resident suffered two open wounds on his buttocks and,

after having no bowel movement for four days, was hospitalized and died soon

after; and another resident died after being hospitalized for acute respiratory

failure, having not been administered a regime of antibiotics correctly or

repositioned appropriately in his bed/wheelchair. (*Id.* ¶¶ 42, 50-54).   Meanwhile,

the State of Maryland was awarding Lifeline millions of dollars worth of contracts

for its residential services.  (*Id.* ¶¶ 45, 60).  Even so, Lifeline experienced serious

financial problems, becoming insolvent and eventually filing for bankruptcy.  (*Id.*

¶¶ 67-69).

The Complaint relates 10 year-old Damaud Martin's story in detail, who

died on July 2, 2014, while in Lifeline's care in a group home in Anne Arundel

County, Maryland.  (*Id.* ¶¶ 96, 102).  The nurse on duty recounted that she was

watching over Damaud and two other children immediately before Damaud's

death, although each of the children's treatment plans called for one-on-one

nursing.  (*Id.* ¶ 97).  Damaud had been in a coma-like state since 2008 and had a

tracheostomy tube requiring frequent suctioning.  (*Id.* ¶¶ 106, 114).  He died after

going into cardiac arrest.  (*Id.* ¶¶ 101-02).  The state investigation following

Damaud's death was wholly inadequate, and the nurses on duty were not even

interviewed.  (*Id.* ¶¶ 113, 115).

Plaintiff Davis developed severe bedsores while in Lifeline's care in a

Maryland group home.  (*Id.* ¶ 40).  The sores were left untreated and became

infected, progressing to the point that Davis's skin and flesh rotted to the bone.

(*Id.* ¶ 249).  He was eventually hospitalized on or about May 22, 2014, and

underwent three surgical procedures over three weeks.  (*Id.* ¶ 40).

The Complaint recounts numerous instances where Maryland agencies failed

to adequately oversee and/or investigate Lifeline and did not act satisfactorily to

address Lifeline's deficiencies, all the while continuing to award the company

additional contracts.

Plaintiff initiated this action by way of a Writ of Summons, filed on

December 15, 2014, and the Complaint was filed on February 11, 2015, in the

Court of Common Pleas of Lackawanna County, Pennsylvania.  The four-count

Complaint alleges negligence (Count I); a civil rights violation predicated on the

Eighth and Fourteenth Amendments to the United States Constitution (Count II);

punitive damages (Count III); and class action (Count IV).

On March 13, 2015, the Maryland Defendants filed a Notice of Removal in this Court based on federal question jurisdiction, which was concurred in by the Lifeline Defendants.  (Doc. 1).  Thereafter, on March 20, 2015, all three pending motions were filed.  The Maryland Defendants' Motion to Transfer argues that venue is appropriate in the United States District Court for the District of Maryland (Doc. 3), and their Motion to Dismiss is based on lack of personal jurisdiction, failure to state a claim, and immunity (Doc. 5).  The Motion to Dismiss or to Transfer Venue filed by the Lifeline Defendants asserts that the case should be dismissed on personal jurisdiction grounds or, in the alternative, transferred to the federal court in Maryland.  (Doc. 7).  All of the motions have been briefed and are ripe for disposition.[1]

## II.    DISCUSSION

The concepts of personal jurisdiction and venue both concern the territorial reach of the tribunal and not its basic adjudicative power.  4D WRIGHT & MILLER, FED. PRAC. & PROC. § 3801 (4th ed.).  Personal jurisdiction focuses on the

---

[1]  Additionally, on June 2, 2015, we received a letter from Plaintiff's counsel requesting an expedited decision, explaining that the applicable statute of limitation is in danger of tolling were the matter to be dismissed.  (Doc. 17).  (Plaintiff does not advise, however, when the relevant limitations period would expire.)  Regardless, we note that the instant motions became ripe less than two months ago, on April 27, 2015, and admonish that we have rendered our disposition as promptly as possible given the exigencies of this Court's docket.

defendant's activities availing him of the forum and involves both statutory and constitutional dimensions. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436-37 (3d Cir. 1987). Considerations relevant to venue are solely statutory, and the inquiry is broader, looking into the location of other parties and their activities. *See Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005). Under both analyses, we largely accept the allegations of the complaint as true, and we must view the facts in the light most favorable to the plaintiff. *See id.*

Courts generally address issues of personal jurisdiction before considering the appropriateness of venue. *See Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 419 (E.D. Pa. 2005) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979)). However, there are instances favoring a reversal of the inquiries, and, to that end, a court has the power to transfer an action even where it lacks personal jurisdiction over the defendants. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)). Where defendants have sought dismissal for lack of personal jurisdiction, and simultaneously and alternatively moved to transfer, interests of judicial economy militate toward consideration of the transfer issue as an initial matter. *See Allied Sec. Inc. v. Massey Energy Co.*, No. 08-337, 2008 WL 4140389,

at *1 (E.D. Pa. Sept. 5, 2008); *Cumberland Truck Equip.*, 401 F. Supp. 2d at 419;

*Lomanno v. Black*, 285 F. Supp. 2d 637, 640 (E.D. Pa. 2003).  The motions before

us present just such a scenario, and we begin by determining the appropriateness of

transfer.

Here, Defendants seek transfer pursuant to 28 U.S.C. § 1404(a), which

permits a district court to transfer a civil action to any other district where it may

have been brought "[f]or the convenience of the parties and witnesses, in the

interest of justice."  The threshold issue is whether the action could have been

brought in the proposed, alternative forum.  *See Weber v. Basic Comfort, Inc.*, 155

F. Supp. 2d 283, 284 (E.D. Pa. 2001).  If so, the court proceeds to evaluate a

number of public and private interests implicated in transfer.  There is no precise

formula or explicit list of factors in a § 1404(a) analysis, and courts have

considered many variations of the private and public interests enumerated in the

statute (*i.e.*, convenience of parties, convenience of witnesses, and interests of

justice).  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  In

terms of private interests, courts have inquired into: (1) the plaintiff's choice of

forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the

convenience of the parties; (5) the convenience of the witnesses, but only insofar as

a witness would be unavailable for trial in one of the fora; and (6) the location of

books and records, likewise, only inasmuch as they would not be accessible in one of the fora. *See id.* Relevant public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in deciding local controversies; and (5) public policies of the fora. *See id.* The plaintiff's choice of forum should not easily be disturbed, and the defendant bears the burden to demonstrate the need for transfer. *See Eastern Roofing Sys., Inc. v. Simon Property Grp., Inc.*, No. 13-717, 2015 WL 679220, at *2 (M.D. Pa. Feb. 17, 2015). The defendant "is not required to show truly compelling circumstances for change of venue but rather that all relevant things considered, the case would be better off transferred to another district." *Oak St. Printery, LLC v. Fujifilm N. Am. Corp.*, 895 F. Supp. 2d 613, 627 (M.D. Pa. 2012) (citing, indirectly, *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001)) (alteration and internal quotation marks omitted). Ultimately, district courts are vested with "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)).

After a thorough review, we find that venue is appropriate in the District of Maryland and that the salient public and private interest factors weigh in favor of

transfer thereto.

As a preliminary matter, this action could have been filed in the District of Maryland because a substantial part of the events underlying the claim occurred there, and numerous of the Defendants are subject to the Maryland court's personal jurisdiction. *See* 28 U.S.C. § 1391(b).  Notably, only one of the defendants, Lifeline of Pennsylvania, resides outside of Maryland.  On these grounds, we easily conclude that venue is proper in the federal court in Maryland.

Proceeding to the private and public interest factors, the first and most significant consideration is the plaintiff's choice of forum, and, here, via removal Plaintiff at least contstructively chose the Middle District of Pennsylvania. However, such choice is afforded less deference where the selected forum is outside of the plaintiff's state of residence.  *See Barbato v. Greystone Alliance LLC*, 992 F. Supp. 2d 398, 400 (M.D. Pa. 2014); *WellPet, LLC v. Midwestern Pet Foods, Inc.*, No. 09-1556, 2009 WL 5111790, at *2 (M.D. Pa. Dec. 16, 2009); *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 729-30 (E.D. Pa. 2005); *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001).  As previously noted, Plaintiff, and also Plaintiff's guardian, are residents of Maryland.  (Doc. 1-3, ¶ 1).  Accordingly, we give Plaintiff's choice of forum some credit, but discount it because Plaintiff is not a resident of

Pennsylvania.

In terms of the other private interest factors, notably, all named Defendants seek transfer to the District of Maryland.  Fourteen out of the fifteen defendants are resident in Maryland, and the sole Pennsylvania Defendant, Lifeline of Pennsylvania, avers that it never actually transacted any business, obtained any contracts, or provided any services in Pennsylvania.  (Doc. 7-1 (Affidavit of Theresa Martin)).  Furthermore and significantly, the cause of action asserted arose entirely in Maryland, with no operative events occurring in Pennsylvania, and this weighs decidedly in favor of transfer.  *See Aamco Transmission Inc. v. Johnson*, 641 F. Supp. 2d 464, 466 (E.D. Pa. 2009) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Kielczynski v. Consol. Rail Corp.*, 837 F. Supp. 687, 689 (E.D. Pa. 1993)) ("[W]hen a plaintiff has not brought suit in his home forum and the cause of action did not occur in the forum, the choice is given less weight."); *In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006) ("Typically the most appropriate venue is where a majority of events giving rise to the claim arose.").

With respect to the convenience of the parties, this factor should not merely shift the inconvenience of litigating from one party to the other but is trained on a net increase in convenience.  *See Kirschner Bros.Oil, Inc. v. Pannill*, 697 F. Supp.

804, 807 (D. Del. 1988).  Here, the District of Maryland is home to Plaintiff and

his guardian, nearly all of the Defendants, and, as the action occurred there, many

of the likely witnesses.  Defendants note that Laurel, Maryland, where Plaintiff and

his guardian reside, is approximately 8 miles from the District of Maryland's

courthouse in Greenbelt.  On the other hand, Laurel is approximately 100 miles

from Harrisburg, Pennsylvania, where this Court is located.  As to the convenience

of witnesses, Defendants correctly note that, to the extent witnesses reside or are

employed beyond a 100-mile radius of this courthouse, the Court would likely lack

subpoena power over those non-party witnesses.  *See* FED. R. CIV. P. 45(c)(1).  This

observation cuts both ways, however, since Plaintiff also notes that various of his

witnesses, including Secretary Ted Dallas (who is presently the Secretary of the

Pennsylvania Department of Human Services and was formerly the Secretary of

the Maryland Department of Human Resources) and most of Plaintiff's experts are

located in Pennsylvania.  However, the concern that expert witnesses would be

outside of the subpoena power is "merely a red herring" as such a witness is hired

by the party.  *WellPet*, 2009 WL 5111790, at *2 (that investigators hired by the

plaintiff would be located outside of the transferee court's subpoena power did not

raise a transfer issue).[2]

Turning to the public interest factors, we view the most significant consideration to be the local interest in deciding local controversies at home.  The events underlying the instant action took place exclusively in Maryland and are almost entirely between residents of that state.  By contrast, the Commonwealth of Pennsylvania has no meaningful, specific interest in this dispute.  Plaintiff's efforts to insinuate that the Maryland District Court would not afford an impartial adjudication has no basis in fact, and we view the allusion as dubious at best and odious at worst.

We find the remaining public interest factors to be neutral.  In terms of ease, expediency, and expense, neither party argues that similar litigation is pending in this or another forum, which is a central consideration in mitigating wastefulness of time and expense.  *See generally* 15 WRIGHT & MILLER, FED. PRAC. & PROC. § 3854 (4th ed.).  Next, while both Plaintiff and Defendants argue about court congestion, we are "not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of [or against] a

---

[2]  The convenience of counsel is not a relevant private interest that may be considered. *See Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *EVCO Tech. & Dev. Co.*, 379 F. Supp. 2d at 731 n.25.  Notably, Plaintiff's counsel is located in Scranton, Pennsylvania, which Defendants speculate may have been a prominent factor in the choice of forum.

transfer." *Textron Innovations, Inc. v. The Toro Co.*, No. 05-486, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005).  Lastly, a judgment by either district would be enforceable, and neither party raises salient public policies unique to either forum informing our analysis.

In sum, the private and public interest factors balance strongly in favor of transfer to the District of Maryland, not least because all of the events giving rise to the claim occurred there, and Plaintiff and the vast majority of parties and witnesses reside there.  Having determined that transfer is appropriate, we need not address the parties' additional arguments.

## III.   CONCLUSION

For the foregoing reasons, we shall grant Defendants' present motions to the extent they seek transfer to the United States District Court for the District of Maryland, and we shall dismiss the motions as moot in all other respects.  An appropriate Order shall issue.